Cheshire,
No. 4352.

HERBERT A. ALLEN & a.

v.

RALPH B. BEMIS & a.

Submitted October 6, 1954.
Decided October 29, 1954.

248

*Homer S. Bradley* for the plaintiffs, furnished no brief.

*Howard B. Lane* for the defendant Bemis, furnished no brief.

*Louis C. Wyman*, Attorney General and *Warren E. Waters*, Deputy Attorney General, for the State Tax Commission, intervenor.

GOODNOW, J. Taxes are not a lien unless made so by a statute which so provides, either expressly or by implication "so plain as to be equivalent to positive language." *Flack* v. *Agency*, 96 N. H. 335, 336. The chapter of our statutes concerned with the annual taxation of income from interest and dividends (R. L., c. 78) contains no specific reference to a lien to secure the payment of the tax. In R. L., c. 80, s. 17, however, it is provided that "The real estate of every person . . . shall be holden for all taxes assessed against the owner thereof; and all real estate to whomsoever assessed shall be holden for all taxes thereon. All such liens shall continue until one year from October first following the assessment."

By the terms of this section, two tax liens are imposed upon real estate. One of these liens is provided to secure the payment of *"all taxes* assessed against the owner" of that real estate; the other

is provided to secure the payment of all taxes assessed upon the real estate itself "to whomsoever assessed." (Emphasis supplied). *Flack* v. *Agency, supra,* 336. It is our opinion that the class of taxes intended to be secured by the first of these liens is so broadly defined as to clearly include taxes on income from interest and dividends.

This view is confirmed by an examination of the earlier statutes establishing tax liens on real estate. The 1842 statute under which taxes were made a lien upon real estate (R. S., c. 45, s. 13) provided that "The real estate of every person . . . against whom any tax may be assessed, shall be holden for such tax for one year from the first day of June following." By Laws 1868, c. 1, s. 15, this section (then G. S., c. 54, s. 13) was amended by the addition of the following provision: "The lien given by section 13 . . . shall be for all taxes assessed against the owner of the real estate, and not for real estate only." The decision of this court in *Drew* v. *Morrill,* 62 N. H. 23, was concerned with taxes for the year 1876 and involved an interpretation of G. S., c. 54, s. 13, as amended in 1868. At that time, the only taxes generally assessed were those on personal estate, real estate and polls. It was determined that in that case (*p.* 26) "all the taxes assessed" against the owner of real estate "including those on personal estate and poll as well as on real estate" are a lien on the land. Since 1876, there have been no amendments to the statute which indicate any legislative intention to restrict the tax lien on real estate to a narrower field than that defined in *Drew* v. *Morrill, supra.*

In 1923, when the annual taxation of income from interest and dividends originated (Laws 1923, c. 65), "all taxes" assessed against the owner of real estate, including all those assessed other than on real estate, were a lien on the land, under the provisions of R. L., c. 80, s. 17. *Drew* v. *Morrill, supra.* It was unnecessary for the Legislature to expressly state that the new tax then imposed was to be included among "all taxes" as to which the already existing lien applied.

That it plainly intended such an inclusion, however, is evident from the act (Laws 1923, c. 65, s. 15, now R. L., c. 78, s. 24) which provides that "the tax commission may issue a warrant for the collection of any overdue tax to the tax collector of any town or city, who shall have the same remedies . . . for the collection of such taxes as are provided by law for his collection of taxes on personal estate." In his collection of such taxes, the collector is

authorized to proceed by distraint on goods and chattels or by arrest. R. L., c. 80, ss. 4-15. He is also authorized (*Id.*, s. 18), under such circumstances as exist in this case, to sell "such real estate," the word "such" referring to the real estate mentioned in s. 17 upon which that section imposes a lien for taxes. It seems apparent to us that the Legislature did not intend to merely authorize the sale of real estate in order to collect the tax on income from interest and dividends but intended to empower the collector to enforce the lien on that real estate imposed by the terms of s. 17 to secure the payment of "all taxes."

A lien imposed on real estate to secure the payment of "all taxes assessed against the owner thereof," like one imposed on real estate to secure the payment of "all taxes thereon," is an encumbrance on the real estate from the date of the assessment. *Dana v. Colby*, 63 N. H. 169, 171. Such liens are created by statute and no action, recording or other proceeding being prescribed to establish the lien against innocent purchasers for value of the encumbered property, none is required. *Cf. Whitefield &c. District v. Bobst*, 93 N. H. 229.

Taxes on income from interest and dividends are "assessed as of January first." R. L., c. 78, s. 23. While the amount of the tax owed by Southard on account of income received by him in 1949 was not determined until September 1, 1950, and he was first notified of the amount at that time, the tax itself was assessed as of January 1, 1950, a situation not unlike that which exists in connection with the taxation of real and personal property. The lien on the real estate then owned by Southard commenced on January 1, 1950, the date as of which the tax was assessed (*Dana v. Colby, supra*) and continued until October 1, 1951 (R. L., c. 80, s. 17), within which period the proceedings instituted against the real estate to collect the unpaid tax were to be completed.

Whether the existence of such a lien ought to be a matter of public record as a protection to purchasers of real estate is a question for the Legislature.

*Exceptions overruled.*

All concurred.